## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| **NECO BONHAM,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **CIVIL ACTION NO.**_____ |
| | § | |
| **PARKER WINN, MICHAEL CROSS,** | § | **JURY TRIAL DEMANDED** |
| **ZACHARY KULWICKI, JEREMY SULLA,** | § | |
| **and CITY OF RICHARDSON, TEXAS,** | § | |
| **Defendants.** | § | |

## COMPLAINT AT LAW

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Plaintiff NECO BONHAM ("Plaintiff"), complaining of Defendants PARKER WINN, ("WINN"), MICHAEL CROSS, ("CROSS") ZACHARY KULWICKI ("KULWICKI"), JEREMY SULLA ("SULLA") and CITY OF RICHARDSON, TEXAS ("CITY"), and for causes of action respectfully shows this Court as follows:

### I.
### NATURE OF THE CASE

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against Defendants for the use of excessive force by government officials, causing substantial injury to Plaintiff, during his arrest and as a pretrial detainee at City of Richardson Jail in Dallas County, Texas.

2.      Section 1983 authorizes the imposition of liability on a defendant who, under color of law, "subjects, or causes to be subjected, any citizen ... or other person ... to the deprivation of any rights" guaranteed by federal law.

3.      While acting under color of state law, Defendants WINN and CROSS deprived Plaintiff of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States, which guarantee Plaintiff to be free from the unreasonable seizure of his person without due process of law and free from the use of unreasonable, unnecessary, and excessive force; and Defendant CITY similarly violated Plaintiff's constitutional rights in its inadequate training and supervision of Defendants, which was the moving force behind the deprivation of Plaintiff's rights.

4.      Plaintiff's claims against Defendants KULWICKI and SULLA flow from both procedural and substantive due process guarantees of the Fourteenth Amendments to the United States Constitution against the use of excessive force by government officials on pretrial detainees.

5.      Plaintiff asserts claims against WINN, CROSS, KULWICKI and SULLA in their personal capacities for use of excessive force and against CITY for inadequate training and supervision, which was the moving force behind the deprivation of Plaintiff's rights.

## II.  PARTIES

6.      Plaintiff NECO BONHAM is a person of the full age of majority and is a Texas citizen residing in Dallas County, Texas.

7.      Defendant PARKER WINN, Richardson Police Department Badge #1289, is a resident of Texas, is a Police Officer for Defendant CITY, may be served at 200 North Greenville Avenue, Richardson, TX 75081, or wherever he may be found, and is being sued in his individual capacity.

8.      Defendant MICHAEL CROSS, Richardson Police Department Badge #1115, is a resident of Texas, is a Police Officer for Defendant CITY, may be served at 200 North Greenville Avenue, Richardson, TX 75081, or wherever he may be found, and is being sued in his individual capacity.

9.     Defendant ZACHARY KULWICKI is a Detention Supervisor at the City of Richardson Jail, is a resident of Texas, may be served at 140 North Greenville Avenue, Richardson, TX 75081, or wherever he may be found, and is being sued in his individual capacity.

10.     Defendant JEREMY SULLA is a Detention Officer at the City of Richardson Jail, is a resident of Texas, may be served at 140 North Greenville Avenue, Richardson, TX 75081, or wherever he may be found, and is being sued in his individual capacity.

11.     Defendant CITY OF RICHARDSON, TEXAS is a political subdivision of the State of Texas, created and existing by virtue of the laws of the State of Texas. Defendant CITY may be served with this Complaint through the City Manager of the City of Richardson, Texas, Dan Johnson, at Richardson Civic Center, 411 West Arapaho Road, Richardson, TX 75080 or wherever Dan Johnson may be found.

12.     Defendant CITY employed Defendants WINN and CROSS (police officers) who, in the course and scope of their employment, were to enforce traffic laws in the City of Richardson, Texas. Defendant CITY employed Defendants KULWICKI and SULLA (detention officers) who, in the course and scope of their employment, were required to observe, watch over, and manage persons placed in custody within the City of Richardson Jail.

13.     At all times material throughout this complaint, Defendants WINN and CROSS acted under color of state law, ordinance, and/or regulation, and in the course and scope of their employment with Defendant CITY.

14.     At all times material throughout this complaint, Defendants KULWICKI and SULLA acted under color of state law, ordinance, and/or regulation, and in the course and scope of their employment with Defendant CITY.

### III.  JURISDICTION

15.     Jurisdiction exists in this court pursuant to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331, because this action is brought, *inter alia*, under 42 U.S.C. § 1983, to redress the deprivation of rights, privileges, and immunities guaranteed to Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution.

16.     Venue is proper in this court pursuant to Title 28 U.S.C. §§ 1391(b)(1), because the defendants reside--and the cause of action arises--in the Northern District of Texas, Dallas Division.

### IV.  FACTS

**A.     The Traffic Stop**

17.     On or about December 17, 2018, and at or approximately at 11:45 p.m., the following facts existed and occurred:

18.     Defendant WINN was a police officer with Defendant CITY.

19.     Plaintiff, an 18-year-old black male was travelling southbound on Plano Road in Richardson, Texas, and was stopped at a stoplight at the Buckingham Road intersection.

20.     Defendant WINN's police cruiser stopped behind Plaintiff's vehicle, and Defendant WINN activated his lights and siren and made a traffic stop of the Ford Ranger pickup truck being driven and operated by Plaintiff.

21.     Plaintiff safely turned into the Chevron parking lot in compliance with Defendant WINN's attempt to make a traffic stop by activating his lights and siren.

22.     Defendant WINN made a traffic stop of the Ford Ranger.

23.     At all times relevant, Defendant WINN made the traffic stop of the Ford Ranger while acting in the course and scope of his employment with Defendant CITY.  Defendant WINN

was acting as an agent and/or employee of Defendant CITY, and all of his actions were under color of state law.

24.     Defendant WINN approached Plaintiff's vehicle and asked Plaintiff for his driver's license and proof of insurance.

25.     Defendant WINN did not introduce himself or identify what department he was with to Plaintiff.

26.     Plaintiff complied with Defendant WINN's request for identification by giving Defendant WINN his full name, address, and date of birth, because Plaintiff had forgotten his ID card.

27.     Defendant WINN radioed in the information, while Plaintiff patiently and calmly waited in his vehicle.

28.     Plaintiff did not give any reason for Defendant WINN to be alarmed or alerted. Plaintiff was cordial, accommodating, and cooperative.

29.     Defendant WINN called for backup, and Defendant CROSS was dispatched to the scene.

30.     Still seated in his vehicle, Plaintiff calmly and politely asked Defendant WINN, "May I ask why I'm getting stopped?"  Defendant WINN told Plaintiff to hold on for a second while he used his radio, and Defendant WINN radioed in Plaintiff's name, presumably for the purpose of checking for any outstanding warrants on Plaintiff.

31.     Upon finishing calling in Plaintiff's information, Defendant WINN hesitantly responded, "You got a headlight out, back right—uhh--brake lights not working, and also your license plate light is out, so all three of those things."  Defendant WINN lowered his voice in tone

and volume as he went from the headlight to the brake light being out and then immediately raised the pitch and volume of his voice, asking if Plaintiff had insurance on the vehicle.

32.    Defendant WINN's bodycam and dashcam confirm that at no time during the stop did Defendant WINN inspect the front of Plaintiff's vehicle so that he could determine whether a headlight was out.  Defendant WINN approached Plaintiff, who was stopped at the red traffic light, from behind Plaintiff's vehicle and came to a stop behind Plaintiff's vehicle.  Defendant WINN pulled Plaintiff over and stopped his vehicle behind Plaintiff's vehicle.   Defendant WINN approached Plaintiff's vehicle from the rear on foot, and at no time did Defendant WINN even traverse to the front of Plaintiff's vehicle. If WINN had taken the time to inspect the headlights he would have seen that both the right and left headlight were operational, as evidenced by the bodycam of RPD Officer Hein.

 

33.    Moreover, evidence from the dashcam shows that Plaintiff's rear brake light was operational from the moment Defendant WINN pulled behind Plaintiff's stopped vehicle and throughout the duration of the incident in question. Likewise, Plaintiff's license plate light was clearly visible from fifty feet, not as Defendant WINN claimed.

 

34.     Officer Winn's dashcam conclusively contradicts Defendant Winn's statements regarding the brake lights.  The left photo above taken from Winn's dashcam shows the brake lights clearly working when Winn approaches the Plaintiff's stopped vehicle. The right photo shows the tail lights working and the brake lights off as Plaintiff accelerates through the intersection on the green light. This is when Winn initiated the stop of Plaintiff's vehicle.

35.     Defendant WINN requested insurance information from Plaintiff, who calmly complied. Plaintiff opened the glove compartment, removed the insurance information, and handed Defendant WINN the materials. At or about this time, Defendant CROSS arrived on scene and parked his vehicle on the right side of Winn's patrol car and behind Plaintiff's vehicle.  CROSS exited his vehicle and positioned himself at the passenger side of Plaintiff's vehicle and performed a search with his flashlight into the cabin of the vehicle, while Defendant WINN continued questioning Plaintiff. No weapons, contraband, or drugs were in plain sight of Defendant CROSS, and Plaintiff did nothing to give either officer cause for concern.

36.     Defendant WINN returned the insurance information to Plaintiff, stating, "You can put this away," and Plaintiff respectfully replied, "Thank you."  Unbeknownst to Plaintiff, as his head was turned toward the passenger side of the vehicle for a moment putting the insurance

information back into his glove compartment, Defendant WINN reached over with his right hand to unlock Plaintiff's driver's side door lock.

37.     Approximately two minutes into the stop, Defendant WINN told Plaintiff, "Do me a favor--hop out real quick."  Plaintiff, a bit startled, calmly responded, "May I ask why?"

38.     When Defendant WINN did not answer, Plaintiff unbuckled his seatbelt and opened his vehicle door, clearly evidencing his intent to comply with Defendant WINN's commands.  At this point, Plaintiff was non-confrontational and cordial, yet exhibited a bit of confusion and uncertainty at Defendant WINN's intentions.  Plaintiff's door was wide open, and both Defendants WINN and CROSS had their flashlights trained on Plaintiff, whose hands were in plain view. Plaintiff was holding his phone with his right hand, and his left hand was empty, which could clearly be seen by both officers.



39.     With the driver's door fully open, Plaintiff calmly asked Defendant WINN, "Is there a reason why you are asking me to get out of the car?"

40.     Plaintiff displayed a serious concern as to why Defendant WINN was requesting that he step outside the vehicle, and he clearly appeared to be nothing more than a scared teenager confused by the request. Defendant WINN ignored Plaintiff's question and said to Plaintiff, "Hop out for me real quick, buddy."

41.     Plaintiff again calmly responded, "No, may I ask why?"

**PLAINTIFF NECO BONHAM'S ORIGINAL COMPLAINT**                                   8

42.     Defendant WINN again refused to respond to the scared teen's simple and appropriate request and threatened Plaintiff in a clearly menacing voice, ordering: "I'm not going to ask you again."

43.     Plaintiff was in a confused state and somewhat in shock, because Plaintiff had already sincerely questioned Defendant WINN's basis to stop him in the first place. Now Plaintiff's concerns were coupled with Defendant WINN's refusal to tell the teen why he was being required to exit the vehicle. The questionable traffic stop was escalating at a rapid pace, and Defendant WINN was treating the teen as if he had committed a serious crime.

44.     Plaintiff responded, "I can ask why because …." An incensed Defendant WINN then yelled at Plaintiff to "***step out of the car***" and, without waiting for a response, immediately and aggressively lunged into Plaintiff's vehicle to grab him.  Remarkably, **less than 15 seconds** elapsed from Defendant WINN's comment to "hop out for me, buddy" to Defendant WINN's lunging into the vehicle to forcefully grab Plaintiff.

45.     Plaintiff, disoriented and shocked by the sudden movement toward his person, and in fear for his safety spurred by Defendant WINN's irrational, menacing, and unprovoked behavior, instinctively moved and pulled back in a self-protective fashion.



46.     Unable to maintain a grip on Plaintiff, Defendant WINN then stepped back, immediately drew his taser gun, and pointed it at Plaintiff, while shouting loudly "***Get out of the car***!"  At no time during Defendant WINN's forced confrontation with Plaintiff, did Plaintiff make any sudden moves, appear threatening or menacing, not keep his hands in plain sight, reach for or into anything inside the vehicle that might appear suspicious, verbally refuse to cooperate, indicate that it was his intent <u>not</u> to cooperate, and/or exhibit any aggressive behavior toward Defendant WINN, Defendant CROSS, and/or or any other officer who had, by then, arrived on scene. All BONHAM requested was that he be given an answer before complying. BONHAM simply wanted to know why he was being asked to get out of his vehicle and WINN ignored the teen's basic question. Winn, knowing he fabricated the basis to stop the teen, was already dead set on his course of action, unlawful or not and was not going to stray from his intentions.





47.     With Defendant WINN's taser pointing squarely at him, Plaintiff, still calmly sitting in his vehicle, again pleads, "I can ask why."

48.     As Defendant CROSS approached a clearly unhinged WINN, Defendant WINN then suddenly yelled, "He punched me!" (which the video shows to be a complete fabrication).

49.     Plaintiff immediately called out Defendant WINN on his blatant lie and emphatically pleaded, "No I did not."

50.     At this point, Plaintiff was then surrounded and confronted by two police officers, one of whom had a taser gun pointed at him, with the visible intent to shoot. Winn's use of force coupled with Winn's fabrication for the basis for the initial stop and refusal to tell the teen why he was being asked to get out of the vehicle, placed Neco in a state of confusion, panic and uncertainty.



51.     Fearing for his safety, Plaintiff began to record the events on his cell phone, speaking into the phone that Defendant WINN had falsely accused him of punching a law enforcement officer.



52.     After seeing Plaintiff begin to record on his cell phone and Plaintiff's speaking into the phone to record the events, Defendant CROSS asked Defendant WINN, "Want me to grab him?" whereupon Defendants WINN and CROSS then simultaneously pounced on the teen.



53.     Up to this point, Plaintiff had displayed no aggression or threatening behavior toward either officer, had his door wide open, and had both his hands clearly visible for both officers to see. Both officers made the decision to violently escalate the stop and forcibly extricate the 18-year-old in less than 40 seconds after he was requested to exit the vehicle.

**B.      Removal from Vehicle & Arrest**

54.     Defendants WINN and CROSS used unnecessary and excessive force to remove Plaintiff from his vehicle.

55.     Defendant WINN unnecessarily and with excessive force shot Plaintiff with his taser gun after he and Defendant CROSS extricated Plaintiff from the vehicle.

56.     Defendants WINN and CROSS unnecessarily and with excessive force wrestled Plaintiff to the ground.

57.     Defendants WINN and CROSS unnecessarily and with excessive force slammed Plaintiff's head to the ground.

58.     Defendant WINN unnecessarily and with excessive force punched Plaintiff in the head multiple times while he was pinned down by Defendant CROSS.

59.     Defendants WINN and CROSS unnecessarily and with excessive force kneeled and put their weight on the body of Plaintiff, whom they clearly outweighed and on a 2:1 ratio.

60.     Defendants WINN and CROSS unnecessarily and with excessive force placed handcuffs on Plaintiff and placed him under arrest.

61.     Plaintiff, without probable cause or reasonable suspicion, was searched, and no weapons, illicit drugs, or contraband were found on his person.

62.     The vehicle Plaintiff had driven and operated (which was not his own vehicle) was searched, and no weapon, or contraband were located in or on the vehicle. Less than .12g of marijuana was found inside a backpack in the vehicle.[1]

63.     Defendant WINN falsely claimed, alleged, and asserted that, after pulling over the Ford Ranger Plaintiff was driving for a brake light violation, "Bonham swung his left closed fist at Officer Winn, striking him on his right forearm."

---

[1] Researchers estimate that the average "joint" contains 0.32 grams (0.01 ounces) of marijuana. Greg Ridgeway, Beau Kilmer, *Bayesian inference for the distribution of grams of marijuana in a joint,* Drug and Alcohol Dependence, Volume 165, 2016, Pages 175-180.

**PLAINTIFF NECO BONHAM'S ORIGINAL COMPLAINT**                    13

64.    Defendant WINN falsified an allegation of assault on a public servant (a third-degree felony) against Plaintiff solely for the purpose of having a basis (albeit fraudulent) for taking Plaintiff into custody.

65.    All charges against Plaintiff were subsequently rightfully dismissed.

## C.    Bias and Profiling

66.    This incident makes it apparent that Defendant WINN is accustomed to wielding his public authority without question and/or, at a minimum, does not permit anyone to ask why he requires someone to exit their vehicle.

67.    Being ordered to step out of a vehicle is an abnormal request and generally signifies that the detainee is suspected to have done--or has done--something grievously wrong or is about to be arrested and taken to jail.  It is certainly not usual or customary to have a citizen exit his/her vehicle in order for the officer merely to issue a citation for a license plate light violation.

68.    Clearly, sometime prior to his asking Plaintiff for his insurance information, Defendant WINN had already decided and anticipated that Plaintiff would or may be surprised by the request to exit his vehicle.  Further, Defendant WINN had already decided and anticipated that he would use some degree of force to remove Plaintiff if he refused to get out--or delayed getting out--of his vehicle.

69.    Defendant WINN did not provide or indicate any lawful basis to stop Plaintiff until he was already running Plaintiff's information over the radio and only after Plaintiff asked Defendant WINN why he had been stopped.

70.    Generally, an officer will (or will be required by departmental policy to) communicate during a stop--and usually before saying anything else--something along the lines of

"Do you know why you are being stopped?" or "I stopped you because…."  Defendant Winn did not do this, in violation of Defendant CITY'S policy:

> It is the policy of the Richardson Police Department that all arrests, investigative stops, *traffic stops*, pedestrian stops, *searches, and seizures* performed by officers of the Department are a result of facts and circumstances which can be articulated to support a reasonable suspicion or probable cause as required by state and federal law. Police Officers are prohibited from *stopping*, detaining or *searching* any person or taking enforcement action when the officer's actions are solely bias motivated by consideration of the person's race, ethnicity, national origin, religion, gender, sexual orientation, economic status, age, cultural group, or any other identifiable group. Bias-based profiling is prohibited.  (Emphasis added.)
>
> Bias-based profiling is defined as the detention, interdiction or other contact of an individual based solely on the individual's race, ethnicity or national origin, religion, gender, sexual orientation, economic status, age, cultural group, or any other identifiable group.
>
> Supervisors are responsible for the oversight of all officer activity and for ensuring that officer activity is consistent with this policy." [2]

71.     Winn provided a false basis to pull the teen over and despite the unlawful stop and despite having no authority to ask Plaintiff to exit his vehicle, Winn escalated the matter and the force being used.  The force was excessive as the stop was unlawful.

72.     It is well known that arrest data nationwide and in Texas shows a consistent trend of significant racial bias in marijuana arrests. Blacks are 3.73 times more likely than whites to be arrested for marijuana[3] and, in Texas, blacks are 2.3 times more likely than whites to be arrested for possession.[4]  In 2018, blacks accounted for 25.4% of all traffic stops in the City of Richardson, while only representing 9% of the City's population.[5]

---

[2] Richardson Police Department, General Order 1.00-14-01, Bias-based and Racial Profiling.
[3] ACLU Research Report, A Tale of Two Countries, Racially Targeted Arrests in the Era of Marijuana Reform, 2020.
[4] ACLU, The War on Marijuana in Black and White, 2013.
[5] https://www.tcole.texas.gov/content/racial-profiling-reports.

73.     A typical traffic stop resulting from racial profiling has the following characteristics:[6]

a.     The vehicle is stopped on the basis of a minor or contrived traffic violation that is used as a pretext for closer inspection of the vehicle, driver, and passengers;

b.     The driver and passengers are questioned about things that do not relate to the traffic violation;

c.     The driver and passengers are ordered out of the vehicle;

d.     The officers visually check all observable parts of the vehicle;

e.     The officers proceed on the assumption that drug courier work is involved by detaining the driver and passengers by the roadside; and/or

f.     The driver is asked to consent to a vehicle search; if the driver refuses, the officers use other procedures (wait on a canine unit, criminal record checks, license plate checks, etc.) and intimidate the driver (with the threat of detaining him/her, obtaining a warrant, etc.).

74.     Defendant WINN's behavior and actions toward Plaintiff on December 17, 2018, make clear that the traffic stop was the result of racial profiling and Defendant WINN's bias toward young black males. After the incident, Defendant WINN claimed that he "smelled marijuana" in the car, yet another blatant fabrication.  A search of the car after the extrication of and assault on Plaintiff produced a paltry amount marijuana at the bottom of a backpack sealed in a zipped plastic bag.  That a crumble of marijuana in the bottom of a backpack would emit an odor that would have been detected by WINN is simply ludicrous. There was no paraphernalia in the car and no evidence marijuana was being smoked in the car prior to the stop. Further, Plaintiff was clearly not under the influence of marijuana at the time of the incident.

---

[6] Richardson Police Department 2019 Annual Report, Sandra Bland Act.

75.     Simply put, the motivation for Defendant WINN's and/or Defendant CROSS's search was not the odor of marijuana but the fact that Plaintiff was a young black male in a hoodie; he was guilty from the outset of what is commonly known as "Driving while Black."

**D.     Excessive Force**

76.     Richardson "General Order 1.00.42-86" titled "Use of Force" establishes the Purpose, Policy and Procedure regarding the use of force by Richardson police officers.

77.     Section II, A states that "under no circumstances will the level of force utilized be greater than necessary to accomplish a lawful conclusion to a police incident."

78.     Section II, D states "[a]n objectively reasonable amount of less lethal or non-deadly force maybe used when:

1.     necessary to preserve the peace, prevent the commission of an offense, or prevent suicide or self-inflicted injury;
2.     making lawful arrest and searches, overcoming resistance to lawful arrest or searches, in preventing escapes from custody;
3.     in self-defense, or defense of another against unlawful violence in their person or their property; or
4.     preventing or interrupting and intrusion on or interference with the lawful possession of property."

79.     Because the stop of Plaintiff was not lawful as Winn fabricated the basis for the stop, Winn had no lawful basis to ask the teen to exit his vehicle or use any amount of force to make Bonham get out of his vehicle.

80.     Section III, A, 1 defines "Lawful Force" as "an assertive act committed by a police officer in the performance of Duty when necessary to accomplish any of the objectives listed in Section II. D of Order."

81.     Because the stop was unlawful, neither WINN nor CROSS could have been accomplishing any objective under Section II, D.  Therefore, the force used by WINN and CROSS were not lawful and to the contrary, their use of force was unlawful.

82.    Section III, A, 5 defines de-escalation as "[t]alking during a potential force encounter in an attempt to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary. De-escalation may include the use of such techniques as command presents warnings verbal persuasion and tactical repositioning."

83.    Neither WINN nor CROSS attempted to de-escalate the unlawful stop and unlawful search of plaintiff's vehicle and to the contrary escalated matters unlawfully on a fabricated basis.

84.    Section III, A, 16 defines "Objectively Reasonable"as "[t]he determination that the necessity for using force and the level of force used is based upon the officer's evaluation of the situation in light of the totality of the circumstances known to the officer at the time the force is used and upon what a reasonably prudent officer would use under the same or similar situations."

85.    Any use of force on the stopping of Plaintiff's vehicle on a fabricated basis was not objectively reasonable.

86.    Section III, B states that: "De-escalation techniques will be utilized unless an officer believes it would be unsafe, unrealistic or impractical to do so. Any justification for not doing so because it was unsafe, unrealistic or impractical is based on whether a reasonable officer under the same or similar circumstances would have made the same decision."

87.    WINN and CROSS, given that the stop was unlawful, should have de-escalated the situation rather than escalate it. WINN's fabrication that Plaintiff punched WINN shows WINN's intent to escalate the matter even further and demonstrates his intent to use unreasonable force in an unlawful manner while attempting to concoct a basis to do so.

88.     Section III, C states that: "Response to Unreasonable Force – Duty to Intervene All employees have a duty to intervene to prevent or stop the use of excessive force by another employee when it is safe and reasonable to do so. Employees shall immediately report their observations to a supervisor."

89.     Neither WINN nor CROSS complied with this portion of the Richardson Order. Section III, E provides:

"1.  Non-deadly or less-lethal force may be utilized in situations where the officer must take physical action as indicated in Section II.D. of this Order and shall be the objectively reasonable amount of force necessary to resolve the situation."

90.     Because WINN fabricated the basis for the stop and fabricated that Plaintiff punched Winn, the amount of force used by WINN and CROSS could not have been and was not objectively reasonable and both WINN and CROSS knew this at the time of the events giving rise to this action.

**E.     Defendant Winn's History of Misconduct/Excessive Force**

91.     Prior to the subject incident of December 17, 2018, Defendant WINN was on one or more occasions reprimanded for unprofessional conduct.

92.     Prior to the subject incident of December 17, 2018, Defendant CITY knew or should have known that Defendant WINN exhibited a pattern of escalating encounters with the public.

93.     Prior to the subject incident of December 17, 2018, Defendants WINN and CROSS lacked the training necessary to safely interact with the public, including but not limited to training on de-escalation techniques.

94.     Prior to the subject incident of December 17, 2018, Defendants WINN and CROSS lacked proper training on bias-based and racial profiling.

95.     In an incident involving the use of force by the Richardson Police Department on April 18, 2017, Defendant WINN and his fellow officers--in effectuating the arrest of a "non-compliant" black male--tased the suspect multiple times, in addition to punching and elbowing him in the face repeatedly. The suspect had visible injuries to his face consistent with being punched and elbowed. The officers involved were recommended to undertake remedial training in use-of-force options when dealing with a subject displaying passive resistance, as opposed to displaying active aggression. Upon information and belief, Defendant WINN did not participate in this recommended remedial training.

96.     On October 4, 2017, Defendant WINN was the subject of a disciplinary investigation for excessive force after the Dallas County District Attorney contacted the Richardson Police Department regarding a DWI case that was dismissed as a result of excessive force being used during the arrest by Defendant WINN.

97.     On March 26, 2018, Defendant WINN was suspended for violation of Richardson Police Department Rules and Regulations 11.02 and 11.03, failing to report an accident or damage to property to a supervisor and negligent operation of a police vehicle. Defendant WINN had two previous at-fault crashes involving City vehicles resulting in supervisory counseling and a written reprimand

98.     In an incident on September 18, 2017, Defendant WINN proceeded into the bedroom of a citizen's apartment without consent or a search warrant and was found to have violated Richardson Police Order 1.02.06-94 (Search & Seizure), § II, which states in part:

> It is the policy of the Richardson Police Department that search and seizure activity be conducted in accordance with the limits and power placed upon law enforcement

personnel as stated by the Fourth Amendment to the U.S. Constitution, Article I, Section 9 of the Texas Constitution and Article 1.06, Chapter 1, of the Texas Code of Criminal Procedure.

Winn was officially reprimanded for violation of this Order.

99.     In an incident on July 21, 2018, involving the impound of a vehicle involving a family of South Asian descent, Defendant WINN failed to competently use any de-escalation techniques and resorted to tasing a 26-year-old woman and her 55-year-old father.

100.     An investigation into the incident that was subject of <u>this</u> suit was conducted, and Defendant WINN was found to have violated Richardson Police Departmental General Order 1.00.42-86, Use of Force, § III, which provides:

> De-escalation techniques will be utilized unless an officer believes it would be unsafe, unrealistic or impractical to do so. Any justification for not doing so because it was unsafe, unrealistic or impractical is based on whether a reasonable officer under the same or similar circumstances would have made the same decision. Winn was officially reprimanded.

101.     Investigating Supervisor Sergeant Jones wrote in his report of this incident:

> I recontacted Officer Winn the same night of the incident after reviewing the video. I asked Officer Winn why he didn't answer Bonham's question and Officer Winn said he didn't have to. I attempted to explain to Officer Winn that Bonham was cooperative and by answering Bonham's question it could have prevented the escalation of events. Officer Winn disagreed and said Bonham was uncooperative and he gave Bonham many chances to exit the vehicle before Bonham punched him. **I reminded Officer Winn that Bonham only became uncooperative after Officer Winn refused to answer his question and then reached into the vehicle towards him.**
>
> **I also told Officer Winn he should be using de-escalation techniques and he said de-escalation was for mental health calls only.** I corrected him and again tried to explain escalation was in the Use of Force policy. **Officer Winn said he had never attended a de-escalation course, except a short session during RPD yearly inservice.** I asked Officer Winn if he understood that the use of force incident could have been avoided had he just communicated with Bonham. **Officer Winn again disagreed and said if he encountered the same situation**

**the next day he would do the same thing.** He further stated that he didn't do anything wrong, did not violate any rules, and he acted in the manner he was trained. (Emphasis added.)

Winn's lack of training experience and knowledge is shockingly revealing in this encounter.

**F.**     **Plaintiff's Detention in the City of Richardson Jail**

102.     On or about December 18, 2018, and as a result of the initial incident made the subject of this suit, Plaintiff was processed and jailed in the City of Richardson Jail.

103.     On or about December 18, 2018, and at all times relevant through December 23, 2018, personnel at City of Richardson Jail were required to keep Plaintiff safe and free from physical injury or harm.

104.     On or about December 17, 2018 to December 20, 2018, and at all times relevant hereto, City of Richardson Jail personnel placed Plaintiff in an isolation cell. Plaintiff had no prior criminal history.

105.     On or about December 20, 2018, Plaintiff was transferred to a general population cellblock with other inmates, where there was a phone in the cell. Plaintiff attempted to use the phone, but the phone was not operational. The other inmates informed Plaintiff that the telephone had been inoperative for a number of days.

106.     Plaintiff contacted the detention officer on duty, Defendant SULLA, via the cell intercom system and informed him of the inoperative phone and asked if he could be moved to a cell with an operational phone, since there were a number of open cells. Plaintiff stated that he needed to speak with his mother and that it wasn't right that the cell was without a phone, Christmas was approaching, and he needed to confer with his mother about his being released from custody. Defendant SULLA condescendingly retorted, "Not my problem, you're in jail." Plaintiff

was upset and muttered under his breath, "Y'all are a bunch of bitches" and went to his bunk to lie down.

107.    A few minutes later, Detention Supervisor Defendant KULWICKI and Detention Officer Defendant SULLA arrived at Plaintiff's cell. Defendant KULWICKI ordered Plaintiff down from his bunk and instructed him to repeat what he had said to Defendant SULLA over the intercom; after Plaintiff had finished, Defendant KULWICKI got within inches of Plaintiff's face and said, "You can't call my officer a bitch." Plaintiff responded, "I'll call you what I want, you're a bitch and you're a bitch."  Plaintiff then turned around and walked back to his bunk. At no time during the encounter did Plaintiff make any aggressive physical movement toward Defendants KULWICKI or SULLA.

108.    With Plaintiff's back turned, an incensed Defendant KULWICKI punched Plaintiff in the back of his head, grabbed him downward, put him in a headlock, and struck Plaintiff in the head repeatedly. Shortly thereafter, Defendant SULLA grabbed Plaintiff's feet, and Defendants KULWICKI and SULLA carried Plaintiff by his head and his legs to the isolation tank; all the while in doing so, Defendant KULWICKI continued to strike Plaintiff in the head until they reached the isolation tank.

## V.  <u>NO IMMUNITY</u>

109.    Defendants WINN and CROSS are not entitled to qualified immunity as a matter of law for the reason that the use of excessive force in this case violated Plaintiff's Fourth and Fourteenth Amendment Constitutional rights, and these rights were clearly established at the time of the violation.

110.    WINN fabricated the basis for the stop making the stop unlawful. An officer may require someone to exit their vehicle only if the stop is lawful.  Because the stop was unlawful

Winn had no authority to require the teen exit the vehicle. Furthermore, when the teen asked why he was being required to exit the vehicle, and not receiving an answer, Winn attempted to use force to extract the teen. This use of force was also unlawful.

111.    WINN, intent on violating Plaintiff's constitutional rights and bent on escalating his unlawful stop and his subsequent unlawful commands, fabricated that the teen punched him. This fabrication and the use of force by Winn and Cross was unlawful and they knew it was unlawful when they acted and escalated the matter by use of additional force.

112.    Both Cross and Winn knew that Plaintiff did not strike Winn, however, proceeded to assault the teen and pull him out of the vehicle without any lawful authority to do so as the stop was unlawful and the command to exit the vehicle was unlawful.

113.    Plaintiff was non-violent, non-threatening, unarmed, and not a danger to himself or others.

114.    A reasonable officer would know that the force used against Plaintiff was clearly excessive when engaging with suspects such as Plaintiff under these circumstances.

115.    Defendants WINN and CROSS are not entitled to qualified immunity, because no reasonable officer would have used the force they employed against Plaintiff.

116.    Defendants WINN and CROSS are not entitled to qualified immunity, because it is clearly established that an officer may not use excessive force when a suspect is compliant, unarmed, and subdued.

117.    Defendants KULWICKI and SULLA are not entitled to qualified immunity as a matter of law, for the reason that the use of excessive force in this case violated Plaintiff's Fourteenth Amendment Constitutional rights, and these rights were clearly established at the time of the violation.

118.    The detention officers' use of force was malicious and sadistic and done for the sole purpose of causing harm to Plaintiff, a pretrial detainee, rather than as a good faith effort to maintain or restore discipline.

119.    Numerous judicial authorities have long held that the use of force against a pretrial detainee inmate is reserved for good faith efforts to maintain or restore discipline and that use of excessive force maliciously to cause harm to an inmate by a detention officer is a Constitutional violation subjecting the detention officer to suit under § 1983.

120.    The constitutional right to be free from excessive force is and was clearly established at the time excessive force was used by Defendant KULWICKI against Plaintiff. Clearly established law put Defendant KULWICKI on notice that he could not beat Plaintiff for malicious purposes and no other reason.  Plaintiff was not resisting discipline nor presenting a threat to the safety of Defendant KULWICKI or anyone else, including other guards or inmates.

121.    Deference must be given to the judgment of prison officials and jail officials, who frequently must make decisions regarding the use of force under pressure and/or tense circumstances.  However, the actions of Defendant KULWICKI in this matter went beyond any decision-making requirement as to whether the use of force was necessary upon a detainee; in this matter, no pressure-laden or tense circumstances existed.

122.    Giving deference to the judgment of jail officials, and for other reasons provided herein, Defendant KULWICKI is not entitled to qualified immunity.

123.    Further, Defendant detention officers had reasonable warning and were aware that punching and physically assaulting a non-threatening pretrial detainee where no need exists for the use of physical force (and most certainly not to the extent exerted in this case) could and/or would constitute a violation of an inmate's constitutional rights; they also knew and were aware that the

use of force--and the amount of force they implemented--was far in excess of anything the situation called for and was utilized solely for the purpose of causing harm to Plaintiff.

## VI.  CAUSES OF ACTION

### COUNT I
**PLAINTIFF NECO BONHAM'S CAUSE OF ACTION
AGAINST DEFENDANT POLICE OFFICERS PARKER WINN AND MICHAEL
CROSS FOR EXCESSIVE FORCE COGNIZABLE UNDER 42 U.S.C. § 1983**

124.    Plaintiff hereby adopts by reference paragraphs 1 through 123 of this Complaint the same as if fully set forth herein

125.    Acting in their personal capacities, under color of state law and within the course and scope of their employment as police officers, and without just cause or provocation, Defendants WINN and CROSS assaulted and battered Plaintiff by violently extricating him from his vehicle, throwing him to the ground, tasering him, and striking him in the head and to his body multiple times. The assault on Plaintiff constituted an unauthorized and unlawful seizure of his person through the application of force prohibited under the provisions of the Fourth Amendment to the United States Constitution.

126.    Defendants WINN and CROSS's use of force was not objectively reasonable, in that Defendants WINN and CROSS used more force than a reasonable police officer at the scene would have used under the same or similar circumstances. The use of force was clearly excessive, in that Defendants WINN and CROSS did not have any probable cause or reasonable suspicion to believe that Plaintiff posed an immediate threat of harm to Defendant WINN, Defendant CROSS, or to others.  Plaintiff was not actively resisting arrest or attempting to flee at the time that he was beaten. There was no need for the use of violent force to preserve the peace, maintain order, or to overcome any resistance to authority exhibited by Plaintiff as he sat peacefully in his vehicle, asking Defendant WINN why he was being asked to exit his vehicle. Further, Defendants WINN

and CROSS's use of force was not objectively reasonable, in that there was no need to violently extricate him from the vehicle, nor strike him in the head or to his body multiple times once he was already rendered immobile by Defendant CROSS.

127.    Moreover, the initial stop was unlawful as was Winn's fabrication that Neco struck him. Because there was no lawful basis to stop Neco, Winn had no lawful basis to require that Neco exit the vehicle. Winn's fabrication that Plaintiff punched him in order to justify the use of force further demonstrates Winn's intent to cause unjustified and unlawful harm to the Plaintiff in violation of his constitutional rights.

Both Winn and Cross violated the stated and published policies of the City of Richardson on the use of force.

128.    As a direct result of Defendants WINN and CROSS's unlawful attack on Plaintiff, which was performed under color of state law, Plaintiff suffered grievous bodily harm and was deprived of his right to be free from the unreasonable seizure of his person and the use of excessive force, in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America and 42 U.S.C. § 1983.

129.    As a direct and proximate result of Defendants WINN and CROSS's conduct as set forth above, Plaintiff experienced pain and suffering.

130.    Defendant WINN'S acts as set forth above were intentional, wanton, malicious, evil, oppressive, and/or exhibited a reckless indifference to the federally protected rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendants WINN and CROSS in order to punish Defendant WINN and CROSS and to deter him and others similarly situated from like conduct in the future.

## COUNT II – 42 U.S.C. § 1983
### BYSTANDER LIABILITY AGAINST DEFENDANT CROSS

131.    Plaintiff incorporates by reference paragraphs 1 through 130 as if fully set forth herein.

132.    Plaintiff asserts that Defendant CROSS is a person within the meaning of § 1983, was at all material times acting under color of law, and is liable under the theory of bystander liability, for the reasons that Defendant CROSS witnessed, observed, and failed to prevent Defendant WINN's use of excessive force against Plaintiff.

133.    Defendant CROSS was a police officer who (a) knew that a fellow officer, Defendant WINN, was violating Plaintiff's constitutional rights; (b) had a reasonable opportunity to prevent the harm; and (c) chose not to act. CROSS knew that Winn fabricated that Plaintiff punched Winn.

134.    As an "onlooking" officer who had a realistic opportunity to prevent a fellow officer from inflicting severe bodily harm, Defendant CROSS had a constitutional obligation to take reasonable steps to prevent it but failed to do so.

135.    In fact, Defendant CROSS, in non-compliance with his training and the customs and policies of his office, actually assisted Defendant WINN in his violation of Plaintiff's constitutional rights by restraining Plaintiff so that Defendant WINN could continue to assault Plaintiff and by throwing Plaintiff on the ground himself and injuring him.

136.    Defendant CROSS also violated--and participated in--the violation of Plaintiff's constitutional rights in the assault on Plaintiff, rather making any attempt to stop it.

137.    Thus, Defendant CROSS's participation in the assault and/or his inaction to stop the assault were a proximate cause of the injuries and damages Plaintiff sustained.

**COUNT III – 42 U.S.C. § 1983**
**PLAINTIFF NECO BONHAM'S CAUSE OF ACTION AGAINST DEFENDANT**
**KULWICKI FOR EXCESSIVE FORCE COGNIZABLE UNDER 42 U.S.C. § 1983**

138.    Plaintiff incorporates by reference paragraphs 1 through 137 as if fully set forth herein.

139.    Defendant KULWICKI is a person within the meaning of § 1983 and was acting under color of law when he physically assaulted Plaintiff.

140.    Defendant KULWICKI's use of force was excessive, violating Plaintiff's constitutional rights as a pretrial detainee, which rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.

141.    Defendant KULWICKI's use of force was done maliciously and sadistically for the sole purpose of causing harm to Plaintiff, rather than in a good faith effort to maintain or restore discipline.

142.    Defendant KULWICKI'S use of force was excessive considering:  (a) the extent of the injuries suffered by Plaintiff; (b) whether there was a need for application of force; (c) the relationship between that need, if any, and the amount of force used; (d) the threat reasonably perceived, if any; and (e) any efforts made to temper the severity of a forceful response.

143.    There existed no need for the application of physical force by Defendant KULWICKI at all; even if there had been a need, that need evaporated when Plaintiff was restrained, yet Defendant KULWICKI continued to strike Plaintiff relentlessly in the head.

144.    There was no need for Defendant KULWICKI'S use of force; even if any need could have been deemed to exist at the time, Defendant KULWICKI'S use of force was disproportionate to the "need."

145.    There was no threat that could reasonably have been perceived by Defendant KULWICKI and certainly none that could possibly have warranted his unreasonable use of excessive force.

146.    Defendant KULWICKI failed to temper the severity of his unnecessarily forceful response.

147.    As a direct and/or proximate cause of KULWICKI's actions, Plaintiff suffered damages.

## COUNT IV – 42 U.S.C. § 1983, 14TH AMENDMENT
## BYSTANDER LIABILITY AGAINST DEFENDANT SULLA

148.    Plaintiff incorporates by reference paragraphs 1 through 147 as if fully set forth herein.

149.    Defendant SULLA is a person within the meaning of § 1983, was at all material times acting under color of law, and is liable under the theory of bystander liability for the reasons that Defendant SULLA witnessed, observed, and failed to prevent Defendant KULWICKI's use of excessive force against Plaintiff.

150.    Defendant SULLA was a detention officer who (a) knew that a fellow officer, KULWICKI, was violating Plaintiff's constitutional rights; (b) had a reasonable opportunity to prevent the harm; and (c) chose not to act.

151.    As an "onlooking" officer who had a realistic opportunity to prevent a fellow officer from inflicting severe bodily harm, Defendant SULLA had a constitutional obligation to take reasonable steps to prevent it but failed to do so.

152.    In fact, Defendant SULLA, in non-compliance with his training and the customs and policies of his office, actually assisted Defendant KULWICKI in his violation of Plaintiff's

constitutional rights by restraining Plaintiff so that Defendant KULWICKI could continue to assault Plaintiff.

153.    Defendant SULLA joined in Defendant KULWICKI's unconstitutional assault on Plaintiff rather making any attempt to stop it.

154.    Thus, Defendant SULLA's actions and inaction constitute a proximate cause of the injuries and damages Plaintiff sustained.

## COUNT V
## PLAINTIFF'S CAUSE OF ACTION AGAINST DEFENDANT CITY FOR FAILURE TO INSTRUCT, SUPERVISE, CONTROL, AND/OR DISCIPLINE

155.    Plaintiff herewith adopts by reference paragraphs 1 through 154 of this Complaint the same as if fully set forth herein.

156.    The City Council of Richardson has exclusive management and control of the policies and practices of the Richardson Police Department and the City of Richardson Jail regarding the method and manner of the use of force and is responsible for ensuring that officers of the Richardson Police Department and the City of Richardson Jail conduct themselves in a lawful manner in undertaking and performing their duties. Defendant CITY is vested with the authority to establish policies or customs, practices, and usages of the Richardson Police Department and the City of Richardson Jail through training, supervision, discipline, and otherwise controlling the officers of the Richardson Police Department and the City of Richardson Jail.

157.    Defendant CITY violated Plaintiff's rights by custom and practice of failing to train, instruct, supervise, control, and discipline the police officers of the Richardson Police Department and the City of Richardson Jail in the appropriate use of force. Said custom, practice and usage caused the deprivation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments to the United States Constitution.

158.    There exists within the Richardson Police Department and the City of Richardson Jail policies or customs, practices, and usages that are so pervasive that they have evolved to constitute the policies of the department, such that they are and were the moving force behind, and thereby caused, the constitutional deprivations of Plaintiff as has been set forth herein.

159.    The policies, customs, practices, and usages that now exist include the following:

a.      The officers of the Richardson Police Department and the City of Richardson Jail use excessive force without regard for the need for the use of force or without regard for the legality of its use;

b.      The officers of the Richardson Police Department use tasers routinely without regard for whether an individual poses a threat of immediate harm or is actively resisting or attempting to evade arrest and/or in situations that could be controlled by the use of other means;

c.      The officers of the Richardson Police Department engage in conduct that violates the constitutional rights of citizens with whom they come in contact, including but not limited to arresting, detaining, and prosecuting citizens in violation of the Constitution and laws, both in the acts and means by which they are accomplished;

d.      The officers do not use the least intrusive means of force necessary, and the officers, by their words or actions, escalate encounters with citizens creating or causing the need for officers to use force or to use more force than otherwise would have been required; and

e.      The officers of the Richardson Police Department and the City of Richardson Jail conspire with one another to "cover" for and protect each other from criminal and/or civil sanctions that might arise from the violation of the constitutional rights of citizens.

160.    The failure to train, discipline, and/or supervise Defendants and others at the Richardson Police Department and City of Richardson Jail has resulted in members of the Richardson Police Department and City of Richardson Jail using excessive force as a matter of custom, in violation of clearly established law.

161.    Defendant CITY knew that Defendant WINN had a marked history of using excessive force while on the job as a police officer.

162.    Defendant CITY knew that Defendant WINN had previously been reported and sanctioned for charges of police misconduct during the course and scope of his employment.

163.    Based upon Defendant WINN'S history while employed with Defendant CITY, Defendant CITY knew that retaining Defendant WINN as a police officer for the Richardson Police Department presented a danger to the public at large, and to Plaintiff in particular, and that it was foreseeable that Defendant WINN would fail to perform his responsibilities in a reasonable manner that was consistent with generally accepted law enforcement procedure and protocol.

164.    In addition to hiring and retaining Defendant WINN, Defendant CITY knew or should have known that its failure to provide adequate training and supervision to Richardson Police Department police officers on the use of appropriate force during encounters would result in serious injury and/or death.

165.    In the hiring, retention, and supervision of Defendant WINN as a law enforcement officer for the Richardson Police Department, Defendant CITY failed to use due care and was negligent in the following particulars:

a.    Retaining Defendant WINN to patrol the City of Richardson when his work history was replete with complaints and sanctions for misconduct and documentation of his repeated failure to perform his law enforcement duties in a reasonable and safe manner, including the application and use of force and/or excessive force;

b.    Failing to properly train Defendant WINN and the Richardson Police Department in the use of proper law enforcement procedure and protocol;

c.    Failing to adequately supervise Defendant WINN, when his employment record indicated he presented a danger to the public at large; and

d.    Failing to properly train police officers in essential de-escalation techniques.

166.    The actions of Defendant WINN in his propensity for, and both Defendants WINN and CROSS'S actual application of, the excessive use of force and utter incompetence in de-

escalation even in the most basic of situations falls outside the most fundamental police protocols and procedures. Thus, Defendant CITY'S failure to train, supervise or discipline its officers is not objectively reasonable and was deliberately indifferent.

167.    As a result of Defendant CITY'S failure to train, discipline, and/or supervise the officers of the Department, they deprived Plaintiff of his rights to be free from excessive force and unlawful and unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and remediable under 42 U.S.C. § 1983.

168.    Additionally and alternatively, the City of Richardson, a municipality, had a municipal practice that is at variance with its formally adopted announced policy. The City of Richardson's Order 1.00.42-86 titled "Use of Force" establishes the alleged Purpose, Policy and Procedure regarding the use of force by Richardson police officers.

169.    The failure to train and the inadequate training in the use of force, de-escalation and excessive force, amounts to deliberate indifference to the rights of persons with whom the police come in contact, and that deliberate indifference was the moving force of the violation of the plaintiff's federally protected rights.

170.    The training in the proper use of force and de-escalation is obviously necessary to avoid constitutional violations, such as the instant case where WINN and CROSS were forcefully removing Plaintiff from his vehicle. The obvious need for this training is demonstrated by Winn's complete lack of understanding and comprehension as to his actions in violation of Order 1.00.42-86 and the alleged and publicized use of force policy by the City of Richardson.

171.    There is a sufficiently close causal connection between the deliberately indifferent training and the deprivation of the plaintiff's federally protected right. The City of Richardson, despite Winn's history and despite the bodycam and dashcam evidence, could have come to other

conclusion than to find Plaintiff's rights violated. The City's failure to appropriately discipline Winn demonstrates the deliberate indifference as well.

## VII.  DAMAGES AS TO ALL DEFENDANTS

172.    Plaintiff suffered the following damages proximately caused by Defendants' wrongful conduct described herein:

     a.     Physical pain and suffering in the past and future;
     b.     Mental anguish in the past and future;
     c.     Medical expenses in the past and future;
     d.     Physical impairment in the past and future;
     e.     Disfigurement in the past and future;
     f.     Court costs; and
     g.     Pre- and post-judgment interest as allowed by law.

## VIII.  EXEMPLARY/PUNITIVE DAMAGES

173.    The conduct of Defendants was done with the kind of willfulness, wantonness, fraud, and/or malice, for which the law allows imposition of punitive damages against Defendants.

174.    The acts and omissions of all Defendants as described herein above were intentional, wanton, malicious, evil, and oppressive, or exhibited a reckless indifference to Plaintiff's federally protected rights, thus entitling Plaintiff to an award of punitive damages against all Defendants.

## IX.  COSTS AND ATTORNEY FEES

175.    Plaintiff is entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988(b).  Therefore, Plaintiff requests the Court to award costs and attorney's fees incurred in the prosecution of this litigation.

## X.  TRIAL BY JURY

176.    Plaintiff respectfully demands that this action be tried before a jury.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein and that, upon final trial, Plaintiff be awarded judgment against Defendants, jointly and severally, for actual damages, exemplary damages, pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, and all other relief, legal and equitable, special and general to which Plaintiff may be justly entitled.

Respectfully submitted,

**MR CIVIL JUSTICE**
13601 Preston Road, Suite W217
Dallas, Texas 75240
Office: 214-739-0100
Facsimile: 214-739-0151
Damon@mrlaw.co
Ori@mrlaw.co

By:   */s/ Damon Mathias*
     Damon Mathias
     State Bar No. 24080170
     Ori Raphael
     State Bar No. 24088273

**ATTORNEYS FOR PLAINTIFF**